IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ARGIE PHILLIPS                                                                                    PLAINTIFF

v.                            Civil No. 10-2007

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                          DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Argie Phillips, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed his application for DIB on April 11, 2007, alleging an onset date of October 7, 2006, due to carpal tunnel syndrome, a disorder of the back, numbness/tingling in the fingers, joint pain/arthritis, essential hypertension, type II diabetes, and memory problems. Tr. 99, 161, 169-170, 190, 193, 209, 212, 217. His applications were initially denied and that denial was upheld upon reconsideration. Tr. 38-41, 48-57, 156-161. An administrative hearing was held on November 6, 2008. Tr. 34-89. Plaintiff was present and represented by counsel.

At the time of the second hearing, plaintiff was 59 years of age and possessed a high school education. Tr. 102. He had past relevant work ("PRW") experience as a school bus driver, fire truck driver, taxi (limo) driver, and a forklift operator. Tr. 52-53, 103, 162, 179-188.          O n June 2, 2009, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's

carpal tunnel syndrome and disorders of the back did not meet or equal any Appendix 1 listing. Tr. 97. He found that plaintiff maintained the residual functional capacity ("RFC") to perform medium level work, but must avoid repetitive flexion and extension of his wrists. Tr. 98. With the assistance of a vocational expert, the ALJ determined that plaintiff could return to his PRW as a fire truck driver, school bus driver, taxi (limo) driver, and forklift operator. Tr. 103.

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on November 4, 2009. Tr. 1-4, 14-17. Subsequently, plaintiff filed this action. ECF No. 1. This case is before the undersigned for report and recommendation. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 9, 10.

## II. Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

A. **The Evaluation Process**:

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require his to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an

AO72A
(Rev. 8/82)

impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Evidence Presented:

In December 2005 and May 2006, Plaintiff underwent cataract extraction surgery and lens replacement. Tr. 223-251. Records also indicate that Plaintiff had a history of diabetes mellitus and hypertension. Tr. 254-255, 277-293.

On December 8, 2006, Plaintiff had been doing relatively well since his last visit. Tr. 261-266. However, he continued to experience stress due to his wife's illness. She was undergoing treatment for small cell lung cancer with recurrent metastasis to the brain and was "doing ok." An examination revealed no abnormalities. He had a normal mood and affect. Dr. Juan Hughes noted Plaintiff's history of diabetes and hypertension, and indicated that his blood pressure was presently stable. He was to continue taking the Lisinopril and Verapamil. Plaintiff was also encouraged to eat right, monitor his weight, and remain as active as possible. Tr. 261-266.

On August 1, 2007, Plaintiff underwent a general physical exam with Dr. Stanley Reyenga. Tr. 297-303. Plaintiff reported problems with self diagnosed arthritis, diabetes, hypertension, numbness and tingling in his fingers, and back problems. The exam revealed a slightly decreased range of motion in the lumbar spine, but normal motion in all other areas with no evidence of acute synovitis. There was also no evidence of joint abnormalities, muscle atrophy, muscle weakness, or sensory abnormalities. He was able to hold a pen and write, touch fingertips to palm, had a

decreased grip, could oppose thumb to fingers, could pick up a coin, could stand and walk without assistive devices, could walk on heel and toes, and could squat and arise from a squatting position. Plaintiff was oriented to time, person, and place and showed no evidence of psychosis or a serious mood disorder. Dr. Reyenga diagnosed him with diabetes, chronic lumbar back pain, hypertension, hyperlipidemia, muscle joint complaints, and a history compatible with carpal tunnel syndrome. He did not, however, indicate what limitations, if any, these impairments caused. Tr. 297-303.

On November 19, 2007, Plaintiff reported that his wife died in March and that he was eating only one meal per day. Tr. 371-374. Most of his meals were microwaveable. For physical activity, he was working in his chicken houses. His A1c level was 6.3. Tammy Hamilton, the dietician, discussed the importance of physical activity, portion control, weight loss, increased fiber, and carbohydrate counting. Tr. 371-374.

This same date, Plaintiff underwent a general exam with Dr. Joel Cheong. Tr. 375-388. Again, he reported that his wife had died in March and that he was depressed. However, Plaintiff denied suicide ideations and declined depression medication and/or referral to a social worker. He indicated that he was presently dating. Plaintiff complained of bilateral wrist pain and rated this pain as a three on a ten-point scale. He was diagnosed with hypertension, hyperlipidemia, diabetes, wrist pain, and erectile dysfunction. Dr. Cheong added HCTZ, advised him to continue the Simvastatin, increased his Metformin dosage, and prescribed Levitra. He had a normal gait and station, no pedal edema, no back tenderness, good muscle strength, and a normal range of motion in his upper and lower extremities. Decreased sensation was also noted in the middle three fingers of his right hand. A note indicates that bilateral wrist splints were mailed to Plaintiff's home. Tr. 333, 367. Prosthetic shoes were also ordered for him. Tr. 333.

On November 23, 2007, Plaintiff presented for his one year diabetic eye exam. Tr. 367-370. Plaintiff was diagnosed with 20/20 vision either eye, stable pseudophakia, stable choroidal nevus of the right eye, possible VF defect, and an inferior left quad defect picked up on confrontation. Tr. 367-370.

On January 15, 2008, Plaintiff returned for a blood pressure check. Tr. 365-366. His blood pressure was 149/75. Plaintiff reported no problems and agreed to start HCTZ along with his other medications. Tr. 365-366.

On March 27, 2008, Plaintiff presented at the nutrition clinic to review his diet. Tr. 363-365. He was no longer snacking on candy, and reported having only a cookie or two. His daughter was purchasing his groceries. Plaintiff had decreased physical activity, but was planning to begin some remodeling projects, working in the yard, and walking the dogs for activity. He was eating easy to prepare meals such as ramen noodles, hot dogs, beef stew from a can, maccaroni and cheese, and was limited on his intake of fruits and vegetables. Ms. Hamilton discussed with him the importance of decreasing his carbohydrate intake, increasing his physical activity, losing weight, and decreasing his blood sugar levels. He had lost four pounds over the previous four months. Tr. 363-365.

On March 27, 2008 and May 29, 2008, Plaintiff had eye exams, which revealed ischemic optic neuropathy of the right eye with visual field defect, afferent papillary defect, optic disc pallor, and thinned retinal nerve fiber layer likely related to hypertension. Tr. 352-362. He also had choroidal nevus in the right eye and pseudophakia in both eyes with photophobia. Tr. 354, 360.

On June 13, 2008, Plaintiff underwent an annual exam with Dr. Cheong. Tr. 341-350. His blood pressure was stable, so Dr. Cheong continued his current medications. He was directed to continue taking the Simvastatin for his hyperlipidemia, and the Metformin and Avandia for his

6

diabetes. Dr. Cheong noted that his most recent A1c was level 6.1, down from his August level of 7.9. As for his wrist pain, Plaintiff requested an EMG and nerve conduction studies. He reported numbness when holding the steering wheel. Plaintiff had been prescribed wrist splints in March and stated that the numbness was now localized to the middle three fingers on his right hand. Tr. 341-350.

On June 24, 2008, Plaintiff underwent an evaluation with neurologist, Dr. Chris Vicente. Tr. 326-327, 335-339. He complained of chronic numbness and tinging in both hands, the right greater than the left. Plaintiff denied neck pain that radiated down his upper extremity and arm weakness. An examination revealed some decreased sensation to light touch and pinprick at the second and third digits of the right hand, as well as the third digit of the left hand. There was also a positive Tinel's sign on both wrists. His deep tendon reflexes were 1/4 at the biceps, triceps, and patella. Plantar response was flexor bilaterally. Finger-to-nose testing and heel-to-shin testing were normal. The gait showed no ataxia. Dr. Vicente diagnosed Plaintiff with paresthesias of the hand bilaterally, possible medial nerve entrapment neuropathy at the carpal tunnel or possible neuropathy secondary to diabetes mellitus. He also diagnosed Plaintiff with diabetes mellitus, hypertension, and hyperlipidemia. His blood pressure was 147/67. Dr. Vicente then ordered an EMG and nerve conduction studies of Plaintiff's upper arms. Tr. 326-327. The EMG revealed mild prolongation of distal latency in the right medial motor nerve, slowing of the conduction velocity in the right medial sensory nerve, mild prolongation of the distal latency in the left medial nerve, and less slowing of the conduction velocity in the left median sensory nerve. Tr. 389. Dr. Vicente diagnosed him with mild to moderate bilateral carpal tunnel syndrome, right greater than left. Tr. 389.

On October 29, 2008, Plaintiff returned to Dr. Cheong for assistance in determining his RFC. Tr. 390-398. He continued to wear his wrist brace and to have trouble with his wrist. Although he was still awaiting the results of Plaintiff's EMG, he felt it was reasonable to diagnose him with carpal tunnel syndrome/neuropathy. He also diagnosed Plaintiff with stable hypertension, hyperlipidemia, and diabetes mellitus. An examination revealed normal gait and station, no pedal edema, no back tenderness, good muscle strength, and a normal range of motion in all extremities. However, Dr. Cheong noted decreased sensation in the middle three fingers of the right hand with some improvement in the left hand. Dr. Cheong concluded that Plaintiff could sit for thirty minutes at one time for a total of six hours during an eight hour workday, stand for one hour at a time for a total of two hours, and walk for one hour for a total of two hours. He also determined that, secondary to carpal tunnel syndrome and back pain, Plaintiff could frequently lift up to ten pounds, occasionally lift 11 to 20 pounds, rarely lift over 20 pounds, occasionally push/pull, work in an extended position, work above shoulder level, work overhead, and reach; rarely grasp with the right hand; occasionally grasp with the left hand; rarely finger/ fine manipulate with the right hand; occasionally finger/fine manipulate with the left hand; occasionally bend, squat, crawl, stoop, crouch, kneel, balance, twist, and climb stairs; never climb ladders or scaffolds; and, frequently climb ramps. Dr. Cheong found that Plaintiff should avoid working near hazardous conditions, unprotected heights, and dangerous moving machinery; would have marked limitations with regard to exposure to extremes and sudden or frequent temperature and/or humidity changes; would have moderate limitations with regard to driving/riding in automotive equipment and exposure to noise levels, and would have mild limitations regarding exposure to respiratory irritants and the need for fine visual acuity. He indicated that Plaintiff had been treated at the VA for over three years and that his opinion was based on his personal care and treatment of Plaintiff, the medical records

accessible to him, a current medical examination which lasted thirty minutes, and Plaintiff's description of his symptoms. Dr. Cheong indicated that Plaintiff suffered from chronic pain of moderate severity that was poorly controlled by rest, analgesics, and wrist braces. He then stated that Plaintiff's pain and/or the side effects of his medically necessary pain medication could be reasonably expected to interfere with Plaintiff's ability to concentrate and remember, tolerate stress, perform at a consistent pace without more rest periods than are customarily allowed, restrict activities of daily living, ability to maintain concentration, persistence, or pace; complete a normal workday or workweek without interruptions from pain; and, maintain the capacity for ordinary adaptive functioning. He then diagnosed Plaintiff with neuropathy in both hands, worse in the right, secondary to carpal tunnel syndrome or diabetes with paresthesia and weakness producing significantly diminished grip and manual dexterity in fingering and handling small objects; diabetes type II; chronic lower back pain probably secondary to arthritis and/or degenerative disk disease; pain in multiple joints secondary to degenerative joint disease and possible arthritis; and hypothyroidism. Tr. 390-398.

### III. Discussion:

Plaintiff contends that the ALJ gave inappropriate weight to the opinion of a treating physician, improperly determined Plaintiff's RFC, and incorrectly determined Plaintiff could return to his PRW. We will begin by reviewing the ALJ's credibility findings. When evaluating the credibility of plaintiff's subjective complaints the ALJ is required to make an express credibility determination detailing his reasons for discrediting the testimony. *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001).

The standard of evaluation is not whether plaintiff experiences pain, but if the pain alleged is intense enough to cause functional limitations. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir.

9

2001) (holding that the real issue is not whether the plaintiff is experiencing pain, but how severe and whether it prevents her from performing any kind of work).

An ALJ may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is required to take into account the following factors in evaluating the credibility of a claimant's subjective complaints: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *See id.* The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004). However, the ALJ need not explicitly discuss each *Polaski* factor. *Strongson v. Barnhart,* 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ only need acknowledge and consider those factors before discounting a claimant's subjective complaints. *Id.* Even so, the ALJ may discount a claimant's subjective complaints if there are inconsistencies between the alleged impairments and the evidence as a whole. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001); *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

We note that plaintiff has been diagnosed with type II diabetes. However, the evidence also establishes that his condition is fairly well controlled via diet and oral medications. His most recent average blood glucose level was 6.1, which is considered prediabetes. *See Forte v. Barnhart*, 377

10

F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). We can find no evidence to indicate that Plaintiff has suffered from complications associated with his diabetes or that his condition has required hospitalization to stabilize. In fact, there is no evidence Plaintiff's condition has ever required emergency treatment. As such, while we do agree that this impairment is severe, we do not find it to be disabling.

Plaintiff also suffers from hypertension, which his doctors have repeatedly noted to be stable. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). We can find no evidence to indicate that this condition has limited Plaintiff's ability to perform work-related activities.

Although Plaintiff contends that he suffered from a disorder of the back, we can find no real objective evidence to indicate that this condition significantly impaired his ability to perform work-related activities. Repeat physical exams revealed only a slightly limited range of motion in the lumbar spine, a normal gait and station, and no back tenderness. Dr. Cheong diagnosed him with degenerative disk/joint related issues, but we can find no x-rays or diagnostic tests to show that Plaintiff actually suffered from a degenerative condition. We note that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990). Therefore, while somewhat limiting, we can not say that this impairment is disabling.

The evidence does establish that Plaintiff was suffering from carpal tunnel syndrome in both wrists with the right being more severe. Exams did reveal decreased sensation. However, in spite of these problems, Plaintiff continued to volunteer and drive a fire truck for a Volunteer Fire Department. Thus, while we believe that his carpal tunnel limited him to some degree with regard

to repetitive movements with his wrists, his volunteer work is evidence Plaintiff could at least perform some work, despite his condition. Absent a showing of deterioration, working after the onset of an impairment is some evidence of an ability to work. *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005); *Gowell v. Apfel,* 242 F.3d 793, 798 (8th Cir.2001).

As for Plaintiff's claim of memory problems, we find only evidence to suggest that he suffered from depression following the death of his wife. However, we also note that Plaintiff reported no suicidal ideation and refused by medication and a referral to social services. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). If he was not willing to obtain treatment for his condition, we can only conclude that this condition was not severe and did not limit his ability to perform activities.

Plaintiff's reported activities also undermine his claim for disability. On an adult function report dated May 3, 2007, Plaintiff stated that his daily schedule consisted of fixing breakfast, visiting with his family or friends, responding with the rural fire department when called out, eating dinner at his son's house, and retiring to bed. Tr. 171. He also reported the ability to care for pets (feed, walk, etc.), care for his personal hygiene with the exception of handling small items, prepare simple one-course meals daily, perform light housekeeping chores, do the laundry, repair vehicles for fire department and self, go outside daily, walk, drive a car, ride in a car, go out alone, shop for clothing and groceries, shop for auto parts for repairing vehicles weekly, pay bills, count change, handle a savings account, use a checkbook/money orders, attend meetings for local and county fire districts, and attend classes when necessary to meet the requirements of the Volunteer Fire Department. Tr. 171-175. *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-

12

31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, these activities do not support plaintiff's claim of disability.

Therefore, although it is clear that plaintiff suffers from some degree of impairment, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We next turn to the ALJ's determination that plaintiff had the RFC to medium level work involving no repetitive flexion or extension of his wrists. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional

13

capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ carefully reviewed the medical records, plaintiff's subjective complaints, plaintiff's testimony regarding his daily activities, and the functional limitations set forth by the physicians. On August 20, 2007, Dr. David Hicks completed a physical RFC assessment. Tr. 306-314. After reviewing Plaintiff's medical records, he determined Plaintiff could perform medium level work, but must avoid repetitive flexion and extension of the wrists due to carpal tunnel. Tr. 306-314.

While we note Dr. Cheong's assessment, we also agree with the ALJ's determination that his assessment conflicts with the medical evidence of record. Dr. Cheong's examination on the date he completed the assessment revealed a normal gait and station, no pedal edema, no back tenderness, good muscle strength, and a normal range of motion in all extremities. The only abnormality was decreased sensation in the middle three fingers of the right hand with some actual noted improvement in the left hand. Dr. Vicente's examination of Plaintiff also showed some decreased sensation to light touch and pinprick at the second and third digits of the right hand and third digit of the left hand; a positive Tinel's sign on both wrists; and, deep tendon reflexes of 1/4 at the biceps, triceps, and patella. His gait showed no ataxia. Examinations of Plaintiff in 2007 by Drs. Cheong and Reyenga also showed few abnormalities. Again, Dr. Cheong noted a normal gait and station, no pedal edema, no back tenderness, good muscle strength, and a normal range of motion in his upper and lower extremities. Decreased sensation was evidenced in the middle three

14

fingers of his right hand, but no other abnormalities were seen. Further, Dr. Reyenga found only a slightly decreased range of motion in the lumbar spine with normal motion in all other areas and no evidence of acute synovitis, joint abnormalities, muscle atrophy, muscle weakness, or sensory abnormalities. Plaintiff was able to hold a pen and write, touch fingertips to palm, had a decreased grip, could oppose thumb to fingers, could pick up a coin, could stand and walk without assistive devices, could walk on heel and toes, and could squat and arise from a squatting position. Accordingly, we do not believe that Dr. Cheong's RFC assessment was entitled to significant weight. And, we find substantial evidence to support the ALJ's determination, as the evidence indicates that Plaintiff's only true limitation involved his wrists.

We also find that substantial evidence supports the ALJ's finding that plaintiff can return to his PRW as a fire truck driver, school bus driver, taxi (limo) driver, and forklift operator. The vocational expert testified that an individual with Plaintiff's RFC could return to his PRW. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Plaintiff alleges that his inability to flex and extend his wrists prevent him from these jobs, because these positions, as defined in the Dictionary of Occupational Titles, require the performance of activities precluded by his RFC. However, Plaintiff testified that he was currently driving a fire truck for a volunteer fire department and observing for safety hazards and unsafe practices. Tr. 58-59. His daily activities also indicate that he was going out on calls with the Volunteer Fire Department and repairing Fire Department vehicles. Clearly, Plaintiff was able to perform the task of driving a vehicle, as he was doing so, even with the limitations concerning his wrists. We also note that the ALJ found Plaintiff could perform these jobs as he had performed them in the past.

15

Plaintiff asserts that his PRW as a taxi (limo) driver did not constitute substantial gainful activity. PRW is work the Plaintiff has performed in the "last 15 years, that was substantial gainful activity, and that lasted long enough for [them] to learn to do it." 20 C.F.R. § 404.1560(b)(1). Substantial gainful activity is defined as "the work, without regard to legality, that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful activity level." 20 C.F.R. § 404.1571. However, "work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is defined as, "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b).

Plaintiff contends that his job as a taxi (limo) driver was not substantial gainful activity because he worked at the job for only six weeks and was part-time. However, the length of time he performed the job is really not relevant. The question is whether he worked in the position long enough to learn it. The vocational expert testified that the taxi (limo) driver had a specific vocational preparation (SVP) rating of three. Tr. 75. According to the U.S. Department of Labor, Dictionary of Occupational Titles (Rev. 4th ed.) (DOT), a job with an SVP rating of 3, may be learned in one to three months. *See* DICTIONARY OF OCCUPATIONAL TITLES, at www.westlaw.com. It is true that the Regulations provide that jobs performed less than three months may constitute only an unsuccessful work attempt. 20 C.F.R. § 1574(c)(3). Here, however, Plaintiff was merely driving a taxi cab and we believe that six weeks was ample time to learn this job. However, even if this conclusion is incorrect, Plaintiff was still capable of performing several other jobs that constituted PRW. Therefore, the ALJ's decision would still hold.

16

He also argues that his job as a part-time bus driver did not constitute substantial gainful activity because it was only part-time work. However, part-time work may constitute substantial gainful activity. 20 C. F. R. § 404.1572(a). And, we find this to be the case here, as Plaintiff performed this job for three years. Tr. 53. Clearly, three years in ample time to learn the requirements of the job of bus driver and to memorize a route. Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could return to his PRW.

V.  **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus recommends that the decision be affirmed, and plaintiff's Complaint be dismissed with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 14th day of December 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)